Robert K. Malcolm v. Commissioner.
Malcolm v. Commissioner
Docket No. 1852-69.
United States Tax Court
T.C. Memo 1971-39; 1971 Tax Ct. Memo LEXIS 293; 30 T.C.M. (CCH) 174; T.C.M. (RIA) 71039; March 1, 1971, Filed. Robert K. Malcolm, pro se, 592 Manm St., Hingham, Mass. Joel Gerber, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1964 and 1965 in the amounts of $4,923.81 and $738.99, respectively. The issues presented for decision are as follows: (1) Whether petitioner has substantiated the amounts of income and expenses of an insurance business which he carried on as an individual in 1964 and 1965; and 175 (2) Whether he has established that certain real estate which he sold in 1964 had a basis in excess of $6,215.65. Findings of Fact Robert K. Malcolm (hereinafter petitioner) was a legal resident of Hingham, Massachusetts, at the time he filed his petition. He filed his 1964, amended 1964, and *294 1965 Federal income tax returns with the district director of internal revenue, Boston, Massachusetts. Petitioner entered the insurance business in 1955 and continued in that field as an agent and broker until 1964, when he organized a corporation, R. K. Malcolm Insurance Agency, Inc. (hereinafter RKM) to carry on the business. He owned 98 percent of the stock of the corporation and was its president. RKM, organized on January 20, 1964, was licensed as both an insurance agent and broker in the State of Massachusetts from February 19 to July of that year; it was licensed only as an insurance agent after July. [1]
Sometime after RKM was licensed as an agent and broker, the Massachusetts Insurance Department discovered that an individual, recently licensed as an insurance agent and broker, was serving as an officer of RKM. It was the policy *295 of that department to deny permission to a corporation to serve as an insurance broker if the corporation had an officer who had been licensed as an insurance broker for less than 5 years. Consistent with this policy, RKM was informed that it would be allowed to continue its agency but not its brokerage business. Faced with the possibility of having its brokerage license formally revoked, RKM's board of directors decided to surrender the brokerage license; have petitioner obtain a broker's license in his individual capacity, under the trade name Mill Woods Insurance Agency (hereinafter Mill Woods); and channel all further brokerage business through Mill Woods. This was one of three alternatives which had been suggested by the Massachusetts Insurance Department; in pursuance of this plan, application was made for a brokerage license in the name of Mill Woods, and such license was issued on August 14, 1964. From the date of incorporation of RKM and continuing at least throughout the remainder of 1964, only one set of books was kept to record the receipts and expenditures of both RKM and Mill Woods. The records consisted of a cash receipts and disbursements journal, together with *296 individual account records which indicated the premiums due and received and notations showing who had procured each account. RKM's records show that during 1964 petitioner made deposits totaling $14,738.20 to RKM's bank account. Revenue agents examined the books and records of RKM and petitioner for 1964, but no books or records for the year 1965 were ever disclosed to them. Late in 1964, petitioner procured the services of Braman & Company, certified public accountants (hereinafter Braman), for the purpose of establishing an adequate accounting system and preparing income tax returns for himself and RKM. After an examination of RKM's books, on which at least two accountants spent considerable time, Braman prepared petitioner's original return for 1964. He used the records which petitioner kept for the period from January 1 to January 20, 1964, and RKM's cash receipts and disbursements records for the remainder of 1964. When petitioner's 1964 return was finally completed and shown to him, he found it unacceptable because it made what he considered to be an improper allocation of income and expenses between RKM and Mill Woods; however, he filed this return, together with a note *297 saying that an amended return would be filed in the future. In a memorandum which petitioner wrote to Braman he said: A portion of the rent, phone & other expenses paid by Agency, Inc. [RKM] in Boston were actually expenses to support the brokerage activity [Mill Woods] and since an amount of each of these expenses should be charged to brokerage it is both reasonable & correct that all or most (but preferably All) of the $13,503.65 paid by me to the Agency, Inc. be considered to be payment for the services rendered, and this amount of expense is justified to show up on statements of me, individually, and as Mill Woods. [2]
On the basis of petitioner's statements, Braman prepared an amended return for 1964. 176 Petitioner's original return for 1964 reflected a net loss from his insurance business of $4,506.21 for the period prior to January 20; a net loss of $862.20 by Mill Woods for the period after August 14; and total net loss of $5,368.41. The amended return did not segregate the results of petitioner's *298 individual business operations during the two periods, but reported on a single schedule a net loss of $15,669.07. In the notice of deficiency for 1964, respondent disregarded the amended return for that year and determined that petitioner "received net income of $504.97 from an insurance business rather than a loss of $5,368.41 reported on [his] income tax return." In making this determination, respondent disallowed a portion of the expenses claimed on the original return for the period prior to January 20 and disregarded all income and expenses reported for Mill Woods. Respondent also determined that the adjusted basis of certain real estate sold by petitioner in 1964 was $6,215.65 rather than $8,044.33. For 1965, respondent disallowed a loss of $11,090.89 from Mill Woods claimed by petitioner on his return, stating "it has not been established that any deductible loss was sustained during the taxable year." Ultimate Findings of Fact For 1964, petitioner sustained a net loss of $860 from his Mill Woods insurance business and a total net loss from his individual insurance activities of $355.03. For 1965, petitioner has not established that he suffered any loss from his *299 individual insurance activities. Nor has he shown that his adjusted basis in the real estate he sold during 1964 exceeded $6,215.65. Opinion After several hours of testimony on January 13, 1970, the parties announced in open court that a basis for settlement had been reached, and the trial was adjourned. The parties later informed the Court that the settlement had failed, whereupon the trial was resumed on July 20, 1970. Petitioner handled his case pro se. He attached certain documents to his brief, and during the trial made reference to other materials, none of which was introduced in evidence. In order to correct this apparent oversight and to amplify the record, the Court subsequently permitted the parties to stipulate a number of documents. Our Findings take into account this additional evidence. For the period prior to January 20, 1964, petitioner maintained business records from which his insurance income and expenditures could be computed. After reviewing these records, respondent determined the income and expenditures for that period. Petitioner, while not agreeing with respondent's determination of the amounts of such expenses, has not produced any evidence to support *300 his claim to additional expenditures. Since the burden of proof rested with petitioner, we must uphold respondent's determination. Accordingly, we conclude that petitioner realized net income in the amount of $504.97 from his individual insurance business during the period prior to January 20 of that year. For the period in 1964 after January 20, there is only one set of books - even for the portion of the year after RKM ceased to perform brokerage activities, all the income and expenditures from those activities were recorded on its books. In making the determination here in dispute, respondent treated all the income and expenses recorded on RKM's books as belonging to it and made no allowance for the fact that petitioner individually carried on the brokerage business after August 14, 1964. Petitioner contends that at least the portion of the income and expenses allocable to the brokerage business after that date is attributable to him rather than to RKM. We are persuaded that petitioner conducted his insurance business through two organizations - RKM and Mill Woods - after August 14, 1964, and that he had a valid reason for doing so. We are unable to agree, however, to the accuracy *301 of the income and expenses shown on his amended return. Neither the testimony nor the documentary evidence would support a finding that the amended return is accurate. The parties have stipulated that petitioner personally made substantial deposits in RKM's bank account during the year which he asserts were service fees, but the record does not substantiate this assertion; e.g., it does not show that such deposits were service fees rather than contributions of needed capital to RKM. It seems unreasonable that petitioner would have paid $14,503.65, claimed as a deduction on his amended return, as service fees to RKM, in addition to his other expenses which totaled $7,095.27, when he realized gross income in the amount of only $5,929.85. 177 While the evidence falls short of establishing precisely the amounts of the income and expenses of petitioner's Mill Woods brokerage business, a thorough review of the record has led us to the conclusion that he suffered a net loss of $860 from that business. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). This is approximately the amount which was established by petitioner's accountant on examination of RKM's books and records. *302 While petitioner testified that one-half of the insurance business involved brokerage activities, he offered no corroborative evidence to support his general statement, and we find the statement alone insufficient to support a finding. The remaining issue for 1964 relates to petitioner's adjusted basis in certain real estate sold during that year. No evidence whatsoever was introduced on this question. Since petitioner had the burden of proof, we sustain respondent's determination. Welch v. Helvering, 290 U.S. 111 (1933). In respect to petitioner's 1965 return, respondent disallowed a claimed loss incurred by Mill Woods during that year. Petitioner has failed to produce any records to support the deduction of the expenses claimed to have been incurred. Again, we have no alternative but to sustain respondent's determination. Decision will be entered under Rule 50. Footnotes
1. An insurance agent is closely associated with a particular insurance company and solicits business in its behalf; an insurance broker, on the other hand, works for the person seeking insurance in order to find a company that will accept the risk to be insured against. Mass. Gen. Laws Ann., ch. 175, sec. 162↩ (1970).
2. Petitioner was apparently mistaken in his recollection of the amount he had paid to RKM. The parties have stipulated to amounts actually paid which total $14,738.20.↩